1
2
3
4
5
6                     **UNITED STATES DISTRICT COURT**
7                        **DISTRICT OF NEVADA**
8
9    HOWARD VINCENT BROWN,
10        Petitioner,                        Case No. 2:04-CV-01539-KJD-(PAL)
11    vs.                                    **ORDER**
12    JAMES M. SCHOMIG, et al.,
13        Respondents.
14
15            Before the Court are the Petition for a Writ of Habeas Corpus (#6), Respondents'
16    Answer (#51), and Petitioner's Reply (#55).  The Court finds that Petitioner is not entitled to relief
17    and denies the Petition (#6).
18            In the Eighth Judicial District Court of the State of Nevada, Petitioner was charged
19    with the open murder[1] of Joanne Williams, by kicking and beating her to death.  Ex. 5 (#37-6, p. 2).[2]
20    Petitioner was represented by a public defender.  Petitioner agreed to plead guilty, and the charge
21    was amended, to second-degree murder.  Exs. 7, 8 (#37-6, pp. 8, 16).  The court accepted his plea.
22    Ex. 9 (#37-6, p. 19).  Petitioner then complained to the court about his counsel and guilty plea.  Exs.
23    10, 11 (#37-6, pp. 26, 34).  The court appointed other counsel, who filed a motion to withdraw the

24    _____

25            [1]Open murder is a charge of first-degree murder which includes the lesser offenses of
26    second-degree murder, voluntary manslaughter, and involuntary manslaughter.  Nev. Rev. Stat.
      175.501; Miner v. Lamb, 464 P.2d 451, 453 (Nev. 1970).
27
28            [2]Exhibits are attached to Respondents' Motion to Dismiss (#37).  Page numbers in
      parentheses refer to the Court's electronic images of the documents.

guilty plea. Ex. 12 (#37-7, p. 2). After briefing, the court denied the motion at a hearing. Ex. 14

(#37-7, p. 35). The court sentenced Petitioner to life imprisonment with the possibility of parole

after ten (10) years. Ex. 16 (#37-8, p. 12). Petitioner appealed, and the Nevada Supreme Court

affirmed. Ex. 21 (#37-9, p. 30). Petitioner then filed in state court a post-conviction petition for a

writ of habeas corpus. Ex. 23 (#37-11, p. 2). The district court denied the petition. Ex. 26 (#37-14,

p. 2). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 28 (#37-14, p. 12).

Petitioner then commenced this action.

    "A federal court may grant a state habeas petitioner relief for a claim that was

adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15

(2003) (quoting  28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision

that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court

may not issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly.

Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76

(2003) (internal quotations omitted).

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the

rule's specificity.   The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief.  Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004), cert. dismissed, 545 U.S. 1165 (2005).

Petitioner presents nine (9) grounds for relief.  For ease of analysis, the Court will discuss them out of the order that Petitioner presented.

In Ground 4, Petitioner claims that the justice of the peace erred in conducting the preliminary hearing before investigating whether Petitioner's counsel used a racial epithet, in violation of the Due Process Clause.  In the context underlying a claim of ineffective assistance of counsel, the Nevada Supreme Court ruled:

> During the hearing, appellant's counsel strongly denied making such a comment. Appellant informed the judge that a court transport officer overheard counsel's alleged remark.  The judge then agreed to allow the transport officer to testify. However, the officer was not immediately available.  At the conclusion of the hearing, the judge asked appellant if he desired the court to continue its investigation. Appellant replied, "No, let's drop it."

Ex. 28, pp. 4-5 (#37-14, pp. 15-16) (footnote omitted).  The Court agrees with the Nevada Supreme Court.  Before the preliminary hearing started, the judge inquired about Petitioner's allegations and was willing to call in the officer who might have overheard counsel.  The officer was unavailable because she was at the Family Court, which is several miles away from the Clark County Courthouse.  Ex. 4, pp. 12-16 (#37-3, pp. 13-17).  The judge was willing to continue the investigation afterward, but Petitioner declined.  Id., pp. 105-07 (#37-5, pp. 36-38).  Nothing indicates that the judge was being unfair.

In Ground 1, Petitioner claims that the trial court erred when it denied is motion to withdraw his guilty plea.  A defendant's guilty plea must be entered knowingly and voluntarily, and the court record must reflect that fact.  Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  Petitioner presents five (5) reasons why his guilty plea was unknowing or involuntary:

-3-

1.      Petitioner's trial attorney promised him that he would serve no more than twenty (20) years in prison

2.      Petitioner's trial attorney used a racial epithet;

3.      Petitioner did not understand the consequences of his plea, specifically, that probation was unavailable for second-degree murder;

4.      The trial court failed to advise Petitioner of the elements of malice in second-degree murder, but accepted his admissions; and

5.      The trial court failed to ensure that Petitioner was mentally sound and not under the influence of drugs when he entered his plea.

The Nevada Supreme Court considered the first three (3) reasons on direct appeal. It held:

> We conclude that the district court did not abuse its discretion in denying Brown's presentence motion to withdraw his guilty plea. Brown failed to demonstrate that his guilty plea was not entered knowingly and intelligently. At the hearing on the motion in the district court, Brown did not testify on his own behalf or call any witnesses in support of his motion, such as former counsel, and submitted the case on the record without even the argument of counsel. The State, as well, did not present any witnesses or argument. Based on the totality of the circumstances, the district court concluded that Brown's guilty plea was entered knowingly and voluntarily, and that Brown understood the consequences of his guilty plea, including the potential sentence. We further conclude that Brown's arguments pertaining to counsel's allegedly deficient performance were therefore unsubstantiated and not supported by the record.

Ex. 21, p. 3 (#37-9, p. 32). At the hearing, the district judge stated:

> On the motion to withdraw plea I've read the points and authorities, I've read all of them, I've looked through the transcript that was provided and whenever I took the plea I asked very carefully a lot of the questions to make sure that the plea was being entered voluntarily, that he knew the consequences of the plea. And he knew he was looking at the potential of a life sentence with a minimum eligibility of ten years. Or I also told him that he could be looking at twenty-five years with a minimum of ten years eligibility for parole. There was nothing in there that would indicate there was any guarantee that he only serve ten years. And in dealing with clients quite often I find that they remember only what they want to remember. But he was questioned very carefully by the Court, canvassed by the Court very carefully. So his motion to withdraw his plea is denied.

Ex. 14, p. 2 (#37-7, p. 36). The transcript of the plea hearing bears out the judge's conclusions. See Ex. 9 (#37-6, p. 19).

The Nevada Supreme Court considered the last two (2) reasons in Petitioner's habeas corpus appeal. It held:

First, appellant asserted that the district court erred in accepting his guilty plea because he had not admitted to killing his victim with malice aforethought.  During the plea canvass, appellant acknowledged that he willfully, unlawfully and feloniously killed his victim by beating and kicking her.  When questioned whether he had committed the killing with malice aforethought, appellant responded, "No, I didn't think I would kill her.  I was just being upset."  After conferring with his counsel, appellant acknowledged that he could have stopped kicking and beating the victim, but continued to do so.  Malice aforethought is implied when no considerable provocation appears, or when the circumstances of the killing demonstrate an abandoned or malignant heart.  Thus, we conclude that district appellant [sic] failed to demonstrate his plea was entered unknowingly or involuntarily.

Second, appellant asserted that he was incompetent to enter a guilty plea.  Appellant contended that he was taking medication for schizophrenia and that the medication rendered him incapable of entering a voluntary guilty plea.  During sentencing, appellant's counsel stated that appellant suffered from schizophrenia and needed to stay on his medication.  However, the record belies appellant's claim that he was incompetent to enter a guilty plea.  In his signed plea agreement, appellant acknowledged that he understood the agreement and was not under the influence of any drug that impaired his ability to comprehend the agreement or the proceedings surrounding his plea.  Furthermore, during the plea canvass, appellant indicated that he understood the plea agreement and the consequences of his plea.  Thus, we conclude that appellant his not demonstrated that his plea was involuntary in this regard.

Ex. 28, pp. 2-3 (#37-14, pp. 13-14) (citations omitted).

The Nevada Supreme Court's rulings on the state of Petitioner's guilty plea were reasonable applications of Brady and Boykin.  See 28 U.S.C. § 2254(d)(1).

The disposition of Ground 1 also disposes of three (3) other grounds.  Ground 5 is a re-statement of the fourth reason in Ground 1.  Ground 6 is a re-statement of the fifth reason in Ground 1.  Ground 8 is an abbreviated version of Ground 1.  These grounds are without merit for the same reasons why Ground 1 is without merit.

In Ground 2, Petitioner argues that his sentence, life imprisonment with the possibility of parole after ten (10) years, violates the Eighth Amendment's prohibition of cruel and unusual punishment.  The Eighth Amendment prohibits grossly disproportionate sentences.  Lockyer v. Andrade, 538 U.S. 63, 71-73 (2003) (citing Harmelin v. Michigan, 501 U.S. 957 (1991); Solem v. Helm, 463 U.S. 277 (1983); Rummel v. Estelle, 445 U.S. 263 (1980)).  Nevada has developed the same principle.  Lloyd v. State, 576 P.2d 740, 742 (1978).  On this issue, the Nevada Supreme Court stated at length:

The Eighth Amendment of the United States Constitution does not require strict proportionality between crime and sentence, but forbids only an extreme sentence that is grossly disproportionate to the crime. Further, this court has consistently afforded the district court wide discretion in its sentencing decision, and will refrain from interfering with the sentence imposed "[s]o long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence." A sentence within the statutory limits is not cruel and unusual punishment where the statute itself is constitutional, and the sentence is not so unreasonably disproportionate as to shock the conscience.

In the instant case, Brown does not allege that the district court relied on impalpable or highly suspect evidence or that the relevant statutes are unconstitutional. Brown also concedes that the sentence imposed was within the parameters provided by the relevant statutes. Additionally, we note that the district court expressly stated prior to sentencing Brown that it took into consideration his extensive and documented history of violent behavior directed toward the victim, and Brown's use of alcohol as an excuse for his actions. Accordingly, we conclude that the sentence imposed is not disproportionate to the crime and does not constitute cruel and unusual punishment under either the federal or state constitution.

Ex. 21, pp. 4-6 (#37-9, pp. 33-35) (citations omitted). The Nevada Supreme Court reasonably applied Andrade and the earlier cases. See 28 U.S.C. § 2254(d)(1).

The remaining grounds—3, 7, and 9—claim that Petitioner received ineffective assistance of counsel. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney

1  performance. . . .  Any such set of rules would interfere with the constitutionally protected

2  independence of counsel and restrict the wide latitude counsel must have in making tactical

3  decisions." Id. at 688-89.

4          Review of an attorney's performance must be "highly deferential," and must adopt

5  counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of

6  hindsight." Strickland, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that

7  counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

8  defendant must overcome the presumption that, under the circumstances, the challenged action

9  'might be considered sound trial strategy.'" Id. (citation omitted).

10         The Sixth Amendment does not guarantee effective counsel per se, but rather a fair

11  proceeding with a reliable outcome.  See Strickland, 466 U.S. at 691-92.  See also Jennings v.

12  Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration that counsel fell

13  below an objective standard of reasonableness alone is insufficient to warrant a finding of

14  ineffective assistance.  The petitioner must also show that the attorney's sub-par performance

15  prejudiced the defense.  Strickland, 466 U.S. at 691-92.  There must be a reasonable probability that,

16  but for the attorney's challenged conduct, the result of the proceeding in question would have been

17  different.  Id. at 94.  "A reasonable probability is a probability sufficient to undermine confidence in

18  the outcome." Id.

19         If a state court applies the principles of Strickland to a claim of ineffective assistance

20  of counsel in a proceeding before that court, the petitioner must show that the state court applied

21  Strickland in an objectively unreasonable manner to gain federal habeas corpus relief.  Woodford v.

22  Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

23         In Ground 3, Petitioner claims that his trial counsel was ineffective.  The Nevada

24  Supreme Court addressed his claims as such:

25         Appellant argued that his trial counsel failed to investigate his mental competency,
           did not explain the nature of the charges, coerced him into pleading guilty, and failed
26         to object when appellant did not admit to committing the killing with malice
           aforethought.  The record does not support appellant's contentions.  In his plea
27         agreement, appellant acknowledged that his counsel had thoroughly explained the
           nature of the offenses, possible defenses and the consequences of the plea.
28         Moreover, appellant affirmed in his plea agreement that he was not acting under

-7-

duress, coercion or the influence of drugs.  During the plea canvass, appellant admitted that he understood the plea agreement and was not acing under duress.  The judge inquired whether appellant had any questions concerning the plea agreement, to which appellant responded, "[n]o ma'am."  We conclude that appellant has not demonstrated that his counsel's performance fell below an objective standard of reasonableness.

Ex. 28, p. 4 (#37-14, p. 15).  This was a reasonable application of Strickland.  See 28 U.S.C. § 2254(d)(1).

In Ground 7, Petitioner claims that the attorney who was appointed to represent him on his plea-withdrawal motion provided ineffective assistance, for three (3) reasons:

1.    Plea-withdrawal counsel failed to raise ineffective assistance of trial counsel, i.e., Ground 3;

2.    Plea-withdrawal counsel failed to raise Petitioner's incompetence to plead guilty, i.e., Grounds 6 and 1; and

3.    Plea-withdrawal counsel failed to raise Petitioner's failure to admit the elements of the charge, i.e. Grounds 5 and 1.

The Nevada Supreme Court rejected this ground in light of its discussion and rejection of the underlying issues.  Ex. 28, p. 5 (#37-14, p. 16).  This was a reasonable application of Strickland. Whatever plea-withdrawal counsel's failures might have been, Petitioner would have suffered no prejudice because the underlying grounds were without merit.  See 28 U.S.C. § 2254(d)(1).

In Ground 9, Petitioner claims that appellate counsel provided ineffective assistance for three (3) reasons:

1.    Appellate counsel failed to argue that trial counsel and plea-withdrawal counsel provided ineffective assistance;

2.    Appellate counsel failed to argue that Petitioner was mentally ill and incompetent to enter his guilty plea; and

3.    Appellate counsel failed to argue that Petitioner's guilty pleas was unknowing and involuntary.

On this ground, the Nevada Supreme Court held:

First, appellant asserted appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claims discussed above on direct appeal. However, such claims may not be raised on direct appeal unless an evidentiary hearing has been conducted.  Consequently, appellate counsel's performance was not deficient in this regard.

-8-

1
2
3

Second, appellant argued that appellate counsel failed to pursue the issue of his mental competency on appeal.  However, as previously discussed, there is no evidence to support appellant's assertion that he lacked the mental capacity to enter into a guilty plea.  Thus, this claim is without merit.

4
5
6

Lastly, appellant asserted that appellate counsel was ineffective for not challenging the district court's denial of his motion to withdraw his guilty plea.  Specifically, appellant argued that his guilty plea was invalid because he did not admit to the element of malice aforethought.  However, as discussed above, appellant's admissions during the plea canvass satisfied the malice aforethought element of the offense.  Consequently, appellant's claim is without merit.

7   Ex. 28, pp. 6-7 (#37-14, pp. 17-18) (citations omitted).  This was a reasonable application of

8   Strickland.  See 28 U.S.C. § 2254(d)(1).

9          Petitioner has submitted an Ex Parte Motion for Appointment of Counsel (#54).

10  This motion is moot because the Court is denying the Petition (#6).

11          IT IS THEREFORE ORDERED that Petitioner's Ex Parte Motion for Appointment

12  of Counsel (#54) is **DENIED** as moot.

13          IT IS FURTHER ORDERED that the Petition for a Writ of Habeas Corpus (#6) is

14  **DENIED**.  The Clerk of the Court shall enter judgment accordingly.

15          DATED:  March 25, 2008.

16
17
18

_____
KENT J. DAWSON
United States District Judge

19
20
21
22
23
24
25
26
27
28

-9-